United States v. Saldana-Gonzalez. And we're going to begin with oral argument from Mr. Korfman. Good morning, Your Honors, and may it please the court. Jack Korfman on behalf of defendant appellant Elvin Saldana-Gonzalez. This appeal raises three questions arising from Mr. Saldana-Gonzalez's sentencing hearing after he had pled guilty to a 922G count in which the district court imposed a sentence of 78 months, which was a substantial upward variance from his guideline range over double the low end of that range. And those three issues are first, a procedural issue related to the district court's I think improper personalized commentary about the district court's own personal fear of gun violence in Chicago that it projected into the sentencing hearing. Second, the district court's rejection of that guideline range in favor of a statutory maximum benchmark. And then third, a substantive reasonableness argument about the ultimate sentence. And I'd like to focus today on the procedural issues, although of course I'm happy to answer questions if the court has them. And I want to start with the district court's commentary, and I'm going to quote from the district court a little bit because I think it's pretty clear. The district court first says to Mr. Saldana-Gonzalez, I feel in danger every single day when I drive on the expressway. I do. And I'm sorry, sir. It's because of people like you who have absolutely no respect for the law. And this is exactly what this court has said in Figueroa and in Robinson is not appropriate for a district court to do at sentencing. But this case is a far cry from Figueroa. First of all, it's by no means the only thing that the district court said. He has a very long discussion about this, and he offers that remark really in response to the idea that Mr. Saldana-Gonzalez is carrying guns because he's afraid out on the street or whatever. In context, I'm not sure it's anywhere close to Figueroa. Figueroa, the judge just went off on a rant, and Hitler's dog came into it and all sorts of other things. But this is a much milder comment. So I agree that it is a little bit milder than Figueroa, but I don't think that that saved the comment. And in part, that's for two reasons. First, the district court is responding to an issue about Mr. Saldana-Gonzalez. I think that's right. But the sentencing hearing is individualized to Mr. Saldana-Gonzalez and his offense and what his punishment should be. And so the question of what he feels and what is going on in his mind is an appropriate subject for discussion at the hearing. The question of whether or not the district court has those feelings or shares them is not an appropriate subject for the hearing unless it is brought into the hearing by some other party before the court for some reason. And so for the district court to inject its own personal fear and then to say, and this is my second point, to say this is why I'm giving you a higher sentence because I have this personal fear on the expressway. And this is in the record, but an inference I think is that there is a series of high-profile shootings on the expressway, which I think is what the district court was referring to. So to say that this is what I feel, and then I'm going to impose a higher sentence as a result. And the district court then doubles down on this personal commentary. It's not a one-of comment. Instead, a little bit later in the transcript, the district court says, in fact, the gun violence has gotten so bad that it is affecting my childhood home, the southwest suburb where I grew up. And there was a pregnant woman who was shot, and that never used to happen when I was growing up. And so it is not a one-of or a kind of off-the-cuff remark that might be excused, I think, as a person talking in the heat of the moment. It comes back later on, and both of these comments are then laid at the feet of Mr. Saldana-Gonzalez. And the court is explicit that it is using this line of commentary in an effort to increase Mr. Saldana-Gonzalez's sentence. So do you think it's inappropriate for the judge to say that Chicago was plagued with gun violence? No, I don't, and I think that that is clearly approved of by this court in Hatch. And so if that was all the district court said, I think that, depending on the exact language the court had used instead, that might have been okay. But this is not a Hatch case. And he's saying, because of people like you, people with no respect for the law, cities in a terrible position, pandemic of human behavior, and he expresses, to put it in 3553A terms, that he thinks that there's a need for more significant sentences to obtain both specific and general deterrence. Right? That's right, Your Honor. So again, maybe he shouldn't have said, I'm afraid when I go out, but is that really enough to taint the entire rest of this explanation, which is tethered to the defendant? I think it is, and I think it is because of the purpose of procedural reasonableness, and this is something we know from cases like Figueroa, is not just to end up with a sentencing hearing that sort of gets to the right result, whatever that might be. It's also to ensure a fair process. This is also what the Supreme Court has said in Gall. It's to ensure a fair process and the appearance of a fair process to the defendant and to the court and to the public who might be observing that hearing. And so I think the problem with these personal comments, aside from their inappropriateness in hearing at all, is that they clash with that and they detract from that appearance of justice and fairness where you have a district court who is bringing in its own personal feelings into a hearing that they have no connection to. And again, I think it's important also in that vein, these are totally extraneous comments to the way in which anything else about this case existed. The expressway and the southwest suburb, they don't have anything to do with this case. Nobody says anything to the district court. Mr. Salgana-Gonzalez is not charged in this offense with using a firearm. It's not linked to any of the shootings in the time period that the court is talking about. And so when the district court is bringing in from outside the record, a different set of facts and a different set of information is going well beyond what this court has approved of and it is going well beyond what any of this court's prior precedent would allow. Mr. Corfman, do you think it's a fair reading of the sentencing transcript, though, to say separate and apart from the points you're making that that's not what ultimately drove the sentence? What was really driving the sentence was Mr. Salgana-Gonzalez's criminal history, the offense conduct here, the gravity of the offense conduct in light of the criminal history. That's what really was driving it. So I half agree, I think. I agree with you that the criminal history was incredibly important to the district court. The nature of the criminal history. And it spent a lot of time on that. I don't disagree with that at all. I think that this conduct, you know, the district court spends several pages of the transcript talking about the gun violence and, again, connecting it to its personal feelings. So I don't agree that those things, that it's not really relevant at all. I don't think that that, I think you might be getting at some kind of harmlessness question, and I don't think that that's right. But I do agree that the district court was also, the other thing the district court was concerned about was Mr. Salgana-Gonzalez's criminal history, which it does spend some time talking about. And what was the point you were going to make? At the outset, you said there was some anchoring in the statutory maximum, 10 years? So in the record, when the district court imposes a sentence, it initially recites what the guideline range is and then immediately says, but that's not appropriate. In fact, it says, that's just not sufficient. And says, in fact, a sentence of 120 months, which would be the statutory maximum, would not be unreasonable in this case. So in particular, it's on page 18. He says, because he's had this discussion about the importance of the guidelines. He says, I've talked to you about 3553A. I've talked to you about the importance of the guidelines. And then he says, and I will tell you up front, Mr. Salgana, I'm not giving you a guideline sentence. I'm giving you an above-guideline sentence. And he explains that reason, but he doesn't have to give a guideline sentence. As long as he's correctly calculated what the guidelines range is, which he did. So I think that's right, but maybe a little bit incomplete. He doesn't have to give a guideline range sentence as long as he explains what's going on. And he says, the further I go from the guidelines, I know I have to give a more compelling explanation. Right. But what he ends up doing in the sentencing reasoning is he varies from the guideline range all the way up to the statutory maximum of 120, and then discounts. And then back down again to 78. And then discounts based on mitigation. Because of the allocution and because of his, you know, he takes into account some mitigating factors. That's right. I think that the change from the guideline range to the statutory maximum is where the error occurs, because we know from cases like Ballard and Lockwood that a simple reliance only on criminal history, even a serious criminal history, needs to be especially well-explained. And I don't think that that meets the requirement here under that case law. And if there are no further questions, I'll reserve the rest of my time. Thank you. You may do so. Thank you, Mr. Corfman. We're going to move now to Ms. Yanover. May it please the court, my name is Anne Yanover, and I represent the United States. This court should affirm Mr. Zeldana Gonzalez's sentence because the district court did not err by making comments about his sense of safety or by making comments about gun violence in the city of Chicago. He overly personalizes it, though. I could imagine you're making an argument that even though some of these comments are mistaken, maybe taking it as a whole, any errors are harmless or something, that I'm concerned about somebody saying, as he says, I feel in danger every single day when I drive on the expressway. And then he goes on and starts to talk about his fairly lower middle class but otherwise quiet southwest suburb, not even where this is happening. Highly personalizes it, a pregnant woman shot on Route 83 in the middle of the day. This isn't Mr. Zeldana Gonzalez's problem. I mean, you know, he's being sentenced for possession of a firearm. Yes, Your Honor, I'd like to address two points that you just raised. And as you noted earlier, this case is not like Figueroa. And those personal comments that the district court made, when read in context, as you've acknowledged, the example of the pregnant woman who was shot in his neighborhood, served merely as an example to highlight the rampant and widespread gun violence. But Mr. Zeldana Gonzalez might think he's being sentenced for this pregnant woman's shooting. And he's not. Your Honor, I It's not part of his criminal history. It's not relevant conduct. It's extraneous. Your Honor, I respectfully disagree. The statement is not extraneous when read in context. If you read the sentences that just precede the statement about the pregnant woman who had been shot, the district court says that I've lived in this city for my entire life. It's been as bad as it has been. I'm paraphrasing here a bit. It's on page 20. And then he states, there's shootings going on everywhere. And to serve as an example, to highlight the shootings that are going on everywhere, the district court then turns to a recent shooting, which is the one referencing the woman in his neighborhood. Those comments, again, were made to highlight this rampant and widespread gun violence, which this court has found is appropriate to do when it's tied to the defendant's specific offense and the defendant's conduct. And here, when read in context and when read as a whole, it's clear that the district court did tie these statements that might be considered more personal to the defendant. For example, when highlighting the seriousness of the offense as well as the need for specific deterrence, the district court here emphasized and relied on the fact that the defendant is a convicted murderer and attempted murderer as well. Prior to those two convictions, the defendant was charged and convicted of illegally possessing a firearm. The defendant spent 19 years in prison on both of the murder and attempted murder charges, and both of those convictions and the murder and attempted murder were committed using a firearm. When the defendant was released, he was on parole for only a year and a half, and he was in the city, fled from the police with a loaded, stolen firearm, and as the district court recognized, it was a serious firearm. It was a Glock .40 caliber with 14 rounds of ammunition in it. So when the district court is talking about how this city is as bad as it's been and as long as he can remember and then giving a recent example of the gun violence that's happening, he's making those comments in the context and tying them back to the specific facts related to the defendant in this case. And this court has held in several opinions that that is appropriate and okay for the district court to do. In Hatch, most recently in United States v. Irving, United States v. Diggs, and United States v. Johnson, similar arguments were made. Judge Wood, you also mentioned that the defendant could think that Judge Ness was putting this shooting at his feet or blaming him for this shooting. That type of argument has been rejected by this court in the cases that I just cited to you, and it should be rejected here for the same reasons, which is that the district court tied the comments to the specific facts of this case. I want to turn briefly to this argument about the statutory maximum that Judge Scudder asked about. The district court didn't just mention the guidelines range and then reject the guidelines for the statutory maximum. In fact, he spent significant time going through and explaining how seriously he considered the guidelines range. At page 82 of the appendix, the district court stated, quote, I take the guidelines quite seriously, and I view them as an invaluable tool to help me avoid spitballing when it comes to criminal sentences. The district court held a two-day sentencing hearing. He acknowledged what the guidelines range was. He confirmed with the parties that he had correctly calculated that guidelines range, and he confirmed that the parties didn't object to the guidelines range. From there, he heard extensive argument from the parties. He reviewed all the briefs that were submitted, the sentencing memorandum, the PSR, and he heard the defendant's elocution. There was an adjournment. It wasn't like morning, afternoon, right? There was an adjournment between the two proceedings. That's correct, Your Honor. There was an original sentencing hearing where the parties made their arguments. The district court took a short recess to consider one of the contested enhancements, I believe it was, and then the district court came back and said, I would like to take some more time to thoroughly go through what I've heard today and to think about what an appropriate sentence is here. So the district court spent significant time considering the guidelines range, considering the arguments, acknowledging what the positions of the parties were, and as you acknowledged, Judge Wood, the district court here explained that he understood that if he varied from the guidelines range, whether that was above or below, the more justification he would have to provide for an above-guidelines sentence. And that's exactly what he did here. He provided an extensive and detailed explanation. He didn't just reject the guidelines and then impose 78 months without explaining why 78 months was appropriate here. And the reasons he explained were that there was a need to protect the public from further crimes by this particular defendant, an individual convicted of murder, attempted murder, two other prior gun convictions, who was out on parole within a year and a half carrying a loaded, stolen firearm with 14 rounds of ammunition that he abandoned in a dumpster for anyone really to grab and put their hands on. Luckily, the police were able to recover it. And it's in the record that the defendant also, in flight from police, hit from police, which required a significant amount of Chicago police officers to come out to help and find the defendant before he was ultimately arrested. The district court explained that he considered the defendant's history and characteristics, acknowledging that the defendant's difficult childhood was mitigating. However, the defendant's criminal history, which was gun-centric, quote, gun-centric, was aggravating. He considered the seriousness of the offense. I've sort of highlighted that already, the running from police, 14 rounds of ammunition, and a stolen firearm, and abandoning that gun, being on parole as well. And he spent time talking about the need for specific deterrence here, recognizing that there was nothing in the record to indicate that the defendant had gotten the message here and that if 19 years in prison wasn't going to deter the defendant, 46 months was not going to be sufficient specific deterrence either. And finally, the district court mentioned that general deterrence was something that he considered, and while there is debate about the effectiveness or what consideration general deterrence should receive, the district court noted that debate and found that the law allows him to consider that factor, and he properly considered that factor and explained that to the defendant when he was imposing an above-guideline sentence. Based on the district court's thorough and thoughtful analysis, and deliberate and articulate explanation of why an above-guideline sentence was appropriate here, the record just does not support the argument that the district court abandoned the guidelines range, jumped right to the statutory maximum, and then imposed the sentence without any real justification or explanation. The exact opposite really occurred here. For all of the reasons that I've discussed today, that the district court's comments, when viewed in context, were not extraneous or inflammatory and are distinguishable, as you acknowledged, Judge Wood, from Figueroa and other cases like Wilson, Robinson, Ferguson, and Smith, and for the reasons I've explained, that the district court didn't reject the guidelines range and just impose a sentence with no explanation, we'd ask that this court affirm the district court's sentence of Mr. Zaldana Gonzalez. Thank you, Ms. Yanover. We'll go now to rebuttal. Mr. Korfman. I just want to make two points really briefly. In none of the cases about gun violence as a backdrop in Chicago, in Hatch, in Irving, in Austin, in any of those cases, in none of those cases does the district court say to the defendant in that case, I have a personal experience that this is intruding on me, that this violence is intruding on, and therefore I am explaining it to you in this hearing, and it is affecting how I am imposing your sentence. That's not in any of those cases. Those cases are all for district courts who say, I think that there is a problem with gun violence in Chicago, and I'm going to impose a sentence as a result. So I don't think that those cases get the government where they have suggested they might get us. And the second thing I want to say is the government was reciting all of the different ways in which the district court went through the sentencing factors, but I think if you take a close look at what those sentencing factors are, they really all come back to criminal history. They are the way the criminal history impacts deterrence, impacts how the district court views the offense conduct, but these things are all criminal history. And this kind of overlap, and this is the term from the Castro-Juarez case, which is later cited in both Fockwood and Ballard, this kind of overlap where you use criminal history to feed into different kinds of 3553A factors to sort of broaden the reasoning, those cases say that that's not sufficient. If that's really all you're doing, that doesn't actually support the argument entirely. And with that, we would ask that you vacate Mr. Saldana-Gonzalez's sentence in reverse. Thank you. Thank you, Mr. Korfman. Thank you, Ms. Yonover. The case will be taken under advisement, and the court will close its hearings for the day.